James J. CORBETT,
Petitioner-Appellant,

v.

Donald E. BORDENKIRCHER, Superintendent, Respondent-Appellee.

No. 78–3672.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1979.

Decided Feb. 22, 1980.

William M. Radigan, Asst. Public Defender, Frankfort, Ky., for petitioner-appellant.

James Jay Corbett, pro se.

Robert F. Stephens, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before WEICK, KEITH and BAILEY BROWN, Circuit Judges.

BAILEY BROWN, Circuit Judge.

In this habeas action, petitioner, James J. Corbett, who was convicted of burglary and of being an habitual offender and received a life sentence in 1975 in the circuit court of Henderson County, Kentucky, contends that in his state trial and in the penalty imposed he was deprived of federal constitutional rights. He has exhausted his state remedy by direct appeal. Corbett also contends that the federal district judge, Honorable James F. Gordon, who heard and denied his habeas petition, further erred in dismissing his petition without an evidentiary hearing and without reviewing the transcript of the state trial. We conclude that Corbett is not entitled to habeas relief or to a remand to the district court and therefore affirm the decision of the district court.

Corbett was indicted, along with Charles Edward Jenkins, in a nine count indictment. In counts 1, 2 and 3 they were charged with burglary of the sporting goods store of Nettie Greenwell, burglary of a storehouse at the Ratiki Coal Mine and burglary of the dwelling house of Malcolm Neal. In count 4 they were charged with conspiracy to obstruct justice by concealing evidence of the murder of William Curtis Miller. In count 5, Jenkins alone was charged with stealing Miller's truck after the murder, and in count 6 Corbett alone was charged with harboring and assisting a felon (i. e. a murderer of Miller). In count 7, Corbett was charged with receiving property stolen from Miller shortly after he was murdered. Finally, Jenkins and Corbett were charged in counts 8 and 9 with being habitual criminals.

The state trial court directed a verdict for Corbett as to all counts except the habitual criminal count and count 2 (burglary of storehouse at Ratiki Coal Mine), as to both of which, as stated, Corbett was convicted.

To place this case in perspective, it is necessary to refer to a related habeas case prosecuted by Jenkins but which involved the conviction of Jenkins in another criminal prosecution for the murder and robbery of Miller. That criminal case was tried in the circuit court of Henderson County by the same Judge, and the trial occurred shortly before Corbett's trial with Jenkins in the case that gave rise to the habeas action now before us. Anthony Svara was indicted along with Jenkins for the robbery and murder of Miller. Jenkins, as stated, was convicted of murder and armed robbery, and Svara was convicted of murder. Jenkins was denied relief on direct appeal, and after denial of habeas relief in federal district court, prosecuted an appeal to this court that has been decided. (*Jenkins v. Bordenkircher*, 611 F.2d 162 (1979)). Svara withdrew his direct appeal of his conviction, and he was a witness for the prosecution in the subsequent trial of Corbett and Jenkins.

### Recusal of the Judge

■ Prior to his trial in state court, Corbett moved, supported by affidavit, to have the trial judge recuse himself because the judge had, in the past as a county attorney and as a commonwealth attorney, prosecuted him for crimes in four instances, the first in 1962 and the last in 1970, one of which convictions was relied upon as a basis for charging Corbett with being an habitual offender. The contention was and is that recusal was required because the judge was likely to be prejudiced against Corbett or that, in any event, the judge's prior prosecution of him gives the appearance of an inability to be impartial. There was no allegation that the judge was actually prej-

udiced against Corbett. Moreover, in the habeas petition supported by memorandum in the district court, no allegation was made that the judge actually demonstrated prejudice against Corbett.

In this context, then, the question raised is whether we must apply a *per se* rule and hold that simply because a trial judge has prosecuted a defendant in the past in performing his duty as a public official, due process requires that the judge recuse himself. This question can be answered quickly so far as this Circuit is concerned because in *Jenkins v. Bordenkircher, supra,* which dealt with the same claim made by Jenkins at his murder and robbery trial, he also having in the past been prosecuted by the same trial judge, this court refused to adopt such a *per se* rule. Accordingly, we hold that Corbett was not denied due process by the severance of the trial judge to recuse himself.

### Severance

In the state court, Corbett moved for a severance for trial of the burglary counts (counts 1, 2, and 3) from the other counts having to do with concealing evidence of the murder of Miller, harboring a felon and receiving property stolen from Miller, on the ground that, if all the counts were tried together, his trial would not be fair and therefore he would be denied due process. He contended that the burglary counts involved facts that were unrelated to the facts surrounding the murder of Miller, and points out that, after insisting that the severance be denied, the prosecution applied for and received approval of the trial court to have Svara first testify about the burglary counts, leave the witness stand, and then testify later as to counts related to the murder of Miller. As before stated, all the counts were tried together, the trial court directed a verdict as to all counts except burglary of the Ratiki coal mine storehouse and habitual offender, and the jury convicted Corbett as to these counts.

It should be pointed out that the issue before this court, of course, is not whether the failure to sever these counts for trial was a violation of a rule of procedure (state or federal); rather the issue is whether the failure to sever denied to Corbett due process of law under the Fourteenth Amendment. Although there are many federal district court decisions applying the severance rules contained in the Federal Rules of Criminal Procedure and although there are many federal courts of appeal decisions, exercising supervisory powers, interpreting those same rules, there are few federal decisions dealing directly with the issue of due process as applied to severance of counts for trial under the Fifth Amendment in the federal courts or under the Fourteenth Amendment in the state courts. We therefore believe it would be helpful, initially, to examine how the problem has been dealt with other than as a constitutional question but by courts that of necessity implicitly recognized that due process sets the outer perimeters of permissible joinder of counts for trial.

The issue raised by a motion to sever counts for trial is akin to that dealt with under the rules of evidence that have to do with proof of other crimes. (*See: United States v. Jamar,* 561 F.2d 1103, 1106 (4th Cir. 1977)). Because of the prejudicial effect to a defendant of proof of other crimes (see below), such is not generally allowed but may be allowed to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Federal Rules of Evidence, Rule 404(b). We point this out to show that under such Federal Rules, which have been approved by the Supreme Court, while the evidence of other crimes is generally proscribed, there are many exceptions to the rule.

The inherent possible prejudice to a defendant of joinder of counts for trial is well described in *United States v. Foutz,* 540 F.2d 733 (4th Cir. 1976) as follows (at 736):

> In the instant case, joinder was initially permissible only because the offenses were of the same or similar character. When two or more offenses are joined for trial solely on this theory, three sources of prejudice are possible which may justify the granting of a severance under Rule 14: (1) the jury may confuse and

cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated;[1] (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other;[2] or (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition. (Footnotes omitted)

In spite of this danger inherent in joinder of counts for trial, the Federal Rules of Criminal Procedure, Rule 8(a), broadly provides for joinder as follows:

## Rule 8
## JOINDER OF OFFENSES AND OF DEFENDANTS

(a) **Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.[1]

Rule 14, Fed.R.Cr.P., of course, provides for severance for trial where prejudice is shown even where there has been a proper joinder of counts in an indictment under Rule 8(a).[2] However, a trial court will be overruled for failure to grant a severance for trial under Rule 14 only if there has been an abuse of discretion. As is stated in *Jamar, supra*, at 1106:

In ruling on a motion for severance, the trial court is vested with discretion; it must carefully weigh the possible prejudice to the accused against the often equally compelling interests of the judicial process, which include the avoidance of needlessly duplicative trials involving substantially similar proof. *United*

*States v. Isaacs*, 493 F.2d 1124, 1160 (7th Cir. 1974), cert. denied, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). The exercise of this discretion will be overturned only for clear abuse affecting substantial rights of the accused. *Cataneo v. United States*, 167 F.2d 820, 823 (4th Cir. 1948).

In *Alvarez v. Wainwright*, 607 F.2d 683 (5th Cir. 1979), the court held, *per curiam*, that a failure to sever counts in a Florida state trial could not be a denial of due process unless, *at a minimum*, such failure would constitute "prejudice sufficient to warrant relief under F.R.Cr.P. 14 . . ."

As is pointed out in *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (D.C.Cir.1964), one of the risks to a defendant in trying separate criminal charges in a single trial, that is, the risk of confusing or cumulating the evidence, is reduced where, as here, the crimes are simple and distinct. The court said (118 U.S.App.D.C. at 17, 331 F.2d at 91):

The federal courts, including our own, have, however, found no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials under the rules just discussed.[13] (Footnote omitted).

Moving now to decisions applying due process standards to joinder of counts for trial, in *Ashe v. Valotta*, 270 U.S. 424, 46 S.Ct. 333, 70 L.Ed. 662 (1926), the Court reviewed a grant of habeas relief to a petitioner who had been convicted in a Pennsylvania court in a single trial of killing a man in a street brawl and then killing the policeman who tried to apprehend him and had received a death sentence. The contention was that, by trying the two offenses together, the convicted man had been deprived of juror challenges. In reversing the grant of habeas relief below, Mr. Justice Holmes said, *inter alia*, at 426, 46 S.Ct. at 334:

---

1. The Kentucky Rules of Criminal Procedure have the same provision (Rule 6.18).

2. The Kentucky Rules of Criminal Procedure contain a similar provision (Rule 9.16).

In so delicate a matter as interrupting the regular administration of the criminal law of the State by this kind of attack, too much discretion cannot be used, and it must be realized that it can be done only upon definitely and narrowly limited grounds.

In *United States v. Follette*, 364 F.2d 305 (2nd Cir. 1966), *cert. denied*, 385 U.S. 1016 (1967), a habeas petitioner contended that he had been tried on complaints of three different persons for acts committed at different times for two counts of robbery, two counts of sodomy, three counts of assault with intent to commit sodomy and two counts of assault with intent to commit robbery. The court held, *per curiam*, that at most the joinder of these counts for trial amounted to an abuse of discretion and that such did not present an issue of constitutional dimension.

In *Brandenburg v. Steele*, 177 F.2d 279 (8th Cir. 1949), the court held, *per curiam*, that if counts are properly joined in an indictment under Rule 8(a), F.R.Cr.P., it is not a denial of due process to try them together. *See also*: "Joinder of Offenses," 39 A.L.R.Fed. 479.

In *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1966), the Court had before it an issue that is quite analogous to that presented here. Under Texas law, a person prosecuted for the offense of being an habitual offender could be tried concurrently before the same jury on the habitual offender charge and also the pending criminal charge which, together with other crimes of which he had been convicted in the past, would make him such an offender. This meant that evidence of the conviction of prior crimes is presented to the jury that is also trying the pending charge. The Court held that such a procedure does not deny due process to a defendant so tried.

In the instant case, Kentucky was entitled, under the *Spencer* doctrine, to try Corbett as it did as an habitual offender and concurrently try him for the burglary charge (of which he was convicted) and to prove to the jury the two prior felony convictions.

In this case, there appears to be little chance that evidence of the three burglaries with which Corbett was charged would be confused with the evidence of the other crimes with which he was charged. Moreover, there is no contention here by Corbett that joinder of these counts for trial confounded his defense because he desired to testify as to some counts and not as to others. Thus we are left with the sole possibility that evidence of crimes related to the murder of Miller could have prejudiced Corbett by showing a criminal disposition and influenced the jury in finding him guilty of one count of burglary. However, this possibility is substantially undercut by the fact that the trial judge directed a verdict for Corbett as to all such counts. Further, since, under the *Spencer* doctrine, the prosecution properly, without violating due process, proved two prior felony convictions, it could hardly be said that the jury was influenced by a showing of a criminal disposition by evidence of crimes as to which there was a directed verdict.

Accordingly, we conclude that, even if the joinder of counts for trial could be so egregiously prejudicial as to constitute a denial of due process, this is not such a case.

### Limit on Cross-Examination

Corbett also claims that he was denied confrontation under the Sixth and Fourteenth Amendments by the trial judge's ruling that Svara, as a prosecution witness, could not be cross-examined, for purposes of impeachment of his credibility, as to his having been court-martialed while in the army for a "theft-related" offense, as to his having received less than an honorable discharge from the army and had testified to the contrary in the Jenkins-Svara murder trial, as to his having committed a crime "relating to credibility" while in Viet Nam and as to his having had psychiatric treatment.

In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Court held that the petitioner there, who had been convicted of burglary in an Alaska state

court, had been denied his right of confrontation by limiting the cross-examination of a prosecution witness. In that case, however, the prosecution had sought and obtained a ruling that its key witness could not be cross-examined about his having been adjudicated to be a juvenile delinquent for burglary and was on probation. Counsel for petitioner, in opposing this ruling, made it clear that the evidence would not be sought to impeach the credibility of the witness by showing bad character, but rather to show bias and prejudice in two ways— i. e. because the witness was in fear of having his probation revoked and was therefore cooperative with law enforcement and because the witness would want to point the finger of suspicion of burglary away from himself and towards the petitioner. In concurring in the holding that petitioner had been denied his right of confrontation, Mr. Justice Stewart stated (at 321, 94 S.Ct. at 1112):

> In joining the Court's opinion, I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.

Accordingly, even if all of the matters about which it was sought to cross-examine Svara as proof of bad character were, under generally applicable rules of evidence, proper subjects of cross-examination (questions that we do not decide), we are of the opinion that so limiting cross-examination was not a denial of the right to confrontation. It should also be pointed out that little, if any, harm could have been done to Corbett's defense by so limiting the cross-examination since Svara admitted that he had been convicted of murder of Miller.

## Claim of Cruel and Unusual Punishment

■ Corbett claims that imposition of a sentence of life imprisonment as an habitual offender is cruel and unusual punishment under the Eighth and Fourteenth Amendments in these circumstances when his three felonies are two convictions for store-house breaking and one conviction for dwelling-house breaking. He relies primarily on *Rummel v. Estelle*, 568 F.2d 1193 (5th Cir. 1978) in which a panel did determine that imposition of a life sentence was cruel and unusual punishment where the felonies were three fraud crimes (over a period of about ten years) involving $120.75, $80, and $28.36. However, this panel decision was set aside after an *en banc* hearing. 587 F.2d 651 (1978). The Supreme Court has since granted certiorari, 441 U.S. 960, 99 S.Ct. 2403, 60 L.Ed.2d 1064 (1979).

We conclude that imposition of a life sentence as an habitual offender for three burglary convictions is not cruel and unusual punishment.

## Failure of District Judge to Review Trial Transcript or Hold Evidentiary Hearing

■ As has been stated, the federal district court granted a motion to dismiss Corbett's habeas petition on the ground that it failed to state a claim for relief. At the time the district court dismissed the petition, it had before it the petition with a supporting memorandum and the motion to dismiss and memorandum in support thereof. The contention of Corbett is that this case should be remanded to the district court because it did not review the 1000 page state trial transcript or hold an evidentiary hearing.

In view of the issues presented as they are reviewed in this opinion, we conclude that it was not necessary for the district judge to review the transcript or hold an evidentiary hearing to arrive at a correct decision, which, we determine, the district judge did.

The judgment below is therefore Affirmed.

KEITH, Circuit Judge, dissenting.

I respectfully dissent from the majority's opinion in this case. The issues presented by the circumstances of this case are difficult and cannot be summarily disposed of by reference to *Jenkins v. Bordenkircher*, 611 F.2d 162, 1979, its companion case. Unlike the district court in *Jenkins*, the district court in the instant case did not request the

complete transcript of the state trial, from which it could ascertain after a searching scrutiny that the defendant's right to a fundamentally fair trial was not in fact prejudiced. Because no such determination was made by the district court in this case, I would remand for a careful review of the entire trial record and a determination on the issue of prejudice.

While I do not contend that the circumstances presented by a trial judge presiding over a defendant whom he has previously prosecuted on several occasions constitute a *per se* violation of the defendant's right to a fair trial, I do contend that such a circumstance raises the strong possibility of prejudice to the defendant's right to a fair trial. In such a case, a federal court reviewing the state conviction has a clear duty to carefully scrutinize the record for any evidence of prejudice. After such a review, if the district court is convinced that no prejudice accrued to the defendant by virtue of the trial judge's former prosecutorial relationship to the defendant, a denial of the requested relief on this ground is not erroneous.

However, in this case, the record indicates that no such review of the entire trial record was made by the district court. The district court denied Corbett's application for habeas relief without holding an evidentiary hearing and without requesting from the clerk's office of the Supreme Court of Kentucky a copy of the complete transcript from Corbett's state trial. Because of this failure to completely satisfy itself that no prejudice accrued to defendant, once the strong possibility of prejudice was raised by the triggering circumstances, I am of the opinion that the district court's denial of petitioner's application, without more, was erroneous.

I would remand for a careful view of the record and an explicit determination on the issue of prejudice to the defendant's right to a fair trial.