OPINION OF THE COURT
Gabrielli, J.
On October 4, 1971, petitioner killed his wife, stabbing her more than 80 times with an awl. He then threw himself off an overpass of the Long Island Expressway, in an apparent suicide attempt. On May 2, 1973, he was found not guilty of a charge of her murder by reason of mental disease or defect, and was committed to the custody of the Commissioner of Mental Hygiene pursuant to CPL 330.20 (subd 1). He was initially placed in Mid-Hudson Psychiatric Center, and was subsequently transferred to Central Islip Psychiatric Center. His condition was several times re-evaluated, but each time the commissioner decided not to apply to the court for permission to conditionally discharge or release petitioner pursuant to CPL 330.20 (subd 2). Petitioner himself then commenced this proceeding seeking release pursuant to CPL 330.20 (subd 5). Following an extended hearing at which numerous witnesses testified, Suffolk County Court denied the petition for release on the ground that petitioner had failed to prove by a fair preponderance of the evidence that he could be released "without danger to himself or others” (CPL 330.20, subd 3). The Appellate Division reversed, holding that the burden of proof should have been placed on the commissioner, and remanded for a new hearing. We reverse and hold that Suffolk County Court properly placed upon the petitioner the burden of proving by a fair preponderance of the evidence that he could be released without danger.
It should first be noted that petitioner does not challenge the validity of his initial commitment pursuant to CPL 330.20 (subd 1) (cf. People ex rel. Henig v Commissioner of Mental Hygiene, 43 NY2d 334 [decided herewith]). Indeed, at the time *344 this proceeding was commenced he had been institutionalized for almost two years. Rather, his claim is that he is no longer dangerous to either himself or others, and should therefore be released. The issue before us is a narrow, purely legal one: Must a person who has been validly committed as a result of an acquittal by reason of mental defect or disease, and who at a later time seeks release on the claimed ground that he is no longer dangerous to either himself or others, be required to prove by a fair preponderance of the evidence that he may safely be released? We hold that he must.*
The Suffolk County Court applied the traditional rule that a person who has been lawfully committed, and who subsequently seeks release on the ground that the reasons for his commitment no longer exist, must bear the burden of proving this change in condition (see, e.g., Matter of Richard E. R., 52 AD2d 927; People ex rel. Peabody v Chanler, 133 App Div 159, 164-165, affd on opn below 196 NY 525; Rosario v State of New York, 42 Misc 2d 699, 703; cf. Bolton v Harris, 395 F2d 642, 653; United States v Ecker, 543 F2d 178, 191-193; but see State v Krol, 68 NJ 236, 257). We see no reason to adopt a different rule, since we do not believe that it deprives petitioner of either due process or equal protection. It is beyond doubt that petitioner was both insane and dangerous at the time he murdered his wife and attempted to take his own life; indeed, it is only because of his insanity that he is relieved of criminal liability. Given the clear existence of this condition, as evidenced by the admitted commission of a violent act, it is appropriate that the condition be presumed to continue until the contrary is proven.
The burden which is placed on petitioner is neither excessive nor novel, for the burden of proof is normally placed upon the party who is seeking affirmative relief (see, generally, Richardson, Evidence [10th ed], § 100). Moreover, in a very pragmatic sense, the question of who must shoulder the burden of proof in a case such as this becomes significant only when the evidence is so delicately balanced that to reach a solution it is necessary to give one side or the other the benefit of the doubt. In determining which party is to receive *345 this benefit in a close case, it is necessary to balance the conflicting interests implicated. The petitioner is obviously asserting his very strong and basic interest in liberty, for it can no longer be denied that commitment, albeit for treatment, does involve a substantial deprivation of liberty. The State, on the other hand, is asserting both its parens patriae interest in the mentally incompetent, with its concomitant obligation to protect them from harm to either themselves or others, and its responsibility to exercise its police powers to protect its citizenry from an individual who has given proof positive that he is in fact dangerous to both society and himself. We find that in such a case, the State’s interest must outweigh that of the individual, and it is the people of the State who must be given the benefit of the doubt. As Mr. Justice Titone stated in his dissent below (56 AD2d 1, 20), "where the underlying act was one of extreme violence, reasonable medical doubts and judicial doubts should be resolved in favor of the public * * * and, a fortiori, the burden of proof should devolve upon the detainee to show that he no longer constitutes a danger to himself or others” (citations omitted).
With respect to the extent of the burden which must be shouldered by an individual who is seeking release, we reject any suggestion that he must prove lack of dangerousness beyond a reasonable doubt (see State v Taylor, 158 Mont 323, cert den 406 US 978). Aside from the rather clear constitutional objections to the imposition of such a harsh burden, it should be noted that CPL 330.20 (subd 3) characterizes such a hearing as a civil proceeding. Thus, the applicable standard of proof is that of the normal civil proceeding, and petitioner need only show by a fair preponderance of the credible evidence that he may be discharged or released without danger to himself or others.
Accordingly, the order appealed from should be reversed, without costs, and the case remanded to the Appellate Division for review of the facts.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, without costs, and the matter remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.

 We note that our decision today is to be limited to this type of situation. We do not reach the question of the appropriate placement of the burden of proof in a situation wherein someone has been conditionally released or discharged, and the commissioner subsequently seeks to revoke that discharge or release pursuant to CPI 330.20 (subd 4).